# CITATION



Clerk of the Court
Patti L. Henry
District Clerk
PO Drawer NN
Anahuac, TX 77514

Attorney for Plaintiff(s)
Donald L. Jones
807 N. Upper Broadway, Suite 201,
Corpus Christi, Texas 78401

## THE STATE OF TEXAS

**NOTICE TO DEFENDANT**: "You have been sued. You may employ an attorney. If you or your attorney does not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org." Said answer may be filed by mailing same to: District Clerk's Office, P. O. Drawer NN, Anahuac, Tx.77514, or by bringing it to the office. Our street address is 2128 SH 61, Anahuac, Texas.

To: **Brenda Boudreaux is an individual residing in Bell City, LA** and may be served with process at **7871 Highway 27, Bell City, LA 70630, or wherever she may be found.**

**Greetings:**

YOU ARE HEREBY COMMANDED to appear by filing a written answer to the **PLAINTIFF'S FIRST AMENDED PETITION** at or before 10:00 o'clock, a.m. of the Monday next after the expiration of twenty days after the date of service of this citation before the **253rd District Court** of Chambers County, Texas. Said Petition, was filed on the 31st day of July, 2025 numbered, **25DCV0664** and styled,

**Ducks Unlimited, Inc. vs. Gulf/Inland Contractors, Inc. F/K/A B&J, Inc. Jeffrey L. Boudreaux, Individually, Brenda Boudreaux, Individually, and Continental Casualty Company**

The nature of Plaintiff's demand is fully shown by a true and correct copy of the Plaintiff's First Amended Petition, accompanying this citation, and made part hereof.

The officer executing this citation shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued under my hand and the seal of said court, at Anahuac, Texas on this the 29th day of September, 2025.

Attest: PATTI L. HENRY Clerk,
District Court Chambers County, Texas

By _Crystal M. Wheeler_
Crystal Wheeler, DEPUTY

OFFICER'S RETURN (OUT OF STATE)
THE STATE OF _____
COUNTY  OF _____

Before me, the undersigned authority, on this day personally appeared_____
Who after being by me duly sworn deposes and says that he is above EIGHTEEN years of age, of sound mind, and in no manner interested in the within styled and numbered cause, and competent to make oath of the facts herein stated.

That the within citation came to hand on the _____ day of _____, 20___, at _____ o'clock ____.m., and executed in _____ County/Parish, State of _____ _____ by delivering to the within named respondent, to-wit:
_____, at _____ o'clock ___.m., _____ 20____;
_____, at _____ o'clock ___.m., _____ 20____;
_____, at _____ o'clock ___.m., _____ 20____;

each, in person, a true copy of this citation, with a true and correct copy of the petition attached thereto, having first endorsed on such copy of said citation the date of delivery.

For serving this citation……………….$_____

Total fees……………………………….. $_____

To certify which, witness my hand _____

_____
(To be signed by the person serving citation)

Subscribed and sworn to by the above named _____
Before me this the _____ day of _____, 20_____, to certify which, witness my hand and seal of office.

_____
_____

To be used only by officer serving this citation out of state.
(The party serving this citation shall sign and swear to the above return before a notary public or other authorized to take affidavits)

CERTIFICATE OF DELIVERY

I do hereby certify that I delivered to _____,
_____ on the _____ day of _____,
20_____, at _____ o'clock ___m. this copy of the instrument.

_____
_____
State of _____
By_____
Deputy

CAUSE NO. 25DCV0664

| | | |
|---|---|---|
| DUCKS UNLIMITED, INC. | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 253RD JUDICIAL DISTRICT |
| | § | |
| GULF/INLAND CONTRACTORS, INC. | § | |
| F/K/A B&J, INC. JEFFREY L. BOUDREAUX, | § | |
| INDIVIDUALLY, BRENDA BOUDREAUX, | § | |
| INDIVIDUALLY, AND CONTINENTAL | § | |
| CASUALTY COMPANY | § | CHAMBERS COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED PETITION

Plaintiff, DUCKS UNLIMITED, INC. ("DU") files Plaintiff's First Amended Petition asserting against the following claims and causes of action against the named Defendants, Gulf/Inland Contractors, Inc. f/k/a B&J, INC. ("Contractor" or "B&J"), Jeffrey L. Boudreaux ("Boudreaux"), Brenda Boudreaux ("Boudreaux") and CONTINENTAL CASUALTY COMPANY ("Surety" or "Continental") (collectively referred to hereafter as "Defendants"):

### I.
### DISCOVERY CONTROL PLAN

1.1     Pursuant to Rules 190.1 and 190.4 of the Texas Rules of Civil Procedure, Plaintiff requests that discovery be conducted under Level 3 and affirmatively pleads that this suit is not governed by the expedited actions process in Texas Rule of Civil Procedure 169 because Plaintiff seeks monetary relief over $250,000.00.

### II.
### PARTIES

2.1     Plaintiff, DU is a District of Columbia company with its principal place of business located in Memphis, Tennessee.

2.2     Defendant, Contractor is a Louisiana company doing business in the State of Texas, with its principal place of business in Houma, Louisiana. The Contractor may be served through

its prior registered agent for service of process, Andre Broussard, Jr., at 876 School Street, Houma, LA 70360.

 2.3 Defendant, Jeffrey L. Boudreaux is an individual residing in Louisiana. He may be served at 7871 Highway 27, Bell City, LA 70630 or wherever he may be found.

 2.4 Defendant, Brenda Boudreaux, is an individual residing in Louisiana. She may be served at 7871 Highway 27, Bell City, LA 70630 or wherever she may be found.

 2.5 Defendant, Surety is an Illinois Company doing business in the State of Texas with its' principal place of business located in Chicago, Illinois. The Surety may be served through its prior registered agent for service of process, Jonathan D Kantor at 333 S Wabash CNA Plaza Chicago, IL 60685.

**III.**
**JURISDICTION & VENUE**

 3.1 The Court possesses jurisdiction over the subject matter of this lawsuit and the amount in controversy exceeds the minimum jurisdictional limits of this Court because Plaintiff is seeking to recover monetary damages and other relief against the Defendants of more than $1,000,000.00 in the aggregate. *See* TEX. R. CIV. P. 47.

 3.2 The Court possesses personal jurisdiction over the Defendant, Contractor as that party performed construction and/or engineering services for a marsh restoration project for DU located in Anahuac, Chambers County, Texas. The Defendant, Contractor has therefore purposefully availed itself of the privilege of conducting business activities in both Chambers County and in the State of Texas. The Court further possesses jurisdiction over the Defendant, Contractor because that party committed a tort within the State of Texas and is therefore subject to long-arm jurisdiction pursuant to Texas Civil Practice & Remedies Code §17.042.

---

3.3    The Court possesses personal jurisdiction over the Defendant, Surety as that party provided surety services for the Defendant, Contractor that performed construction and/or engineering services for the benefit of DU for a marsh restoration project located in Anahuac, Chambers County, Texas, and has purposefully availed itself of the privilege of conducting activities in Chambers County and in the State of Texas. The Court also possesses jurisdiction over the Defendant, Surety as it committed a tort within the State of Texas and is therefore subject to long-arm jurisdiction under Texas Civil Practice & Remedies Code §17.042.

3.4    Venue is proper in Chambers County, Texas pursuant to Texas Civil Practice & Remedies Code Section 15.002 because Chambers County is the county in which all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

3.5    Because the Plaintiff has established proper venue against one defendant, the Court similarly possesses venue over all defendants in all claims or actions arising out of the transaction, occurrence or series of transactions or occurrences forming the basis for this lawsuit. As such, venue is proper in Chambers County, Texas concerning all Defendants named and otherwise identified in this case. *See* TEX. CIV. PRAC. & REM. CODE §15.005.

### IV.
### SUMMARY OF RELEVANT MATERIAL FACTS

4.1    DU is an American 501(c)(3) non-profit corporation dedicated to the conservation, restoration and management of wetlands and associated habitats principally benefitting North America's migratory waterfowl populations. These habitats benefit not only waterfowl, but also other wildlife species in addition to all citizens of the United States of America. The vision of Ducks Unlimited is to preserve and create wetland habitat "sufficient to fill the skies with waterfowl today, tomorrow and forever." DU fulfills this vision by facilitating and accomplishing conservation projects in all fifty (50) states, Canada and Mexico, supporting conservation efforts

through habitat delivery, science, public policy and grassroot fundraising efforts. In its' nine decades of service, DU has conserved over nineteen (19) million acres of waterfowl habitat across North American, including one (1) million acres of lands conserved in perpetuity and $230,000,000 in raised funds during the fiscal year 2024 alone. Those one million acres - approximately the size of Rhode Island - producing clean water, reducing flood risks for individuals residing within these watersheds and providing more public land for hunters and other non-consumptive citizen users while improving and preserving biodiversity for all species relying upon crucially important North American wetlands.

4.2     On December 12, 2022, DU entered into a North American Wetlands Conservation Act ("NAWCA") Grant Landowner Agreement with Chambers County resident, Janet Lagow (the "Landowner"). NAWCA provides federal grants directed to conserving wetlands and associated upland habitat for the benefit of migrating waterfowl, shorebirds and other wildlife residing or resting thereupon. The Landowner and DU entered into this agreement to conserve approximately 1,719 acres of estuary and marine wetland habitat located approximately fifteen (15) miles southeast of Anahuac, Texas (the "Lagow Marsh Restoration Project" or "Project"). The Project involved replacing two water control structures and constructing a containment berm to stabilize an existing levee, all with the intended purpose of preventing the daily or periodic inflow of saltwater from adjoining Oyster Bayou, while draining excess flood waters to prevent the prolonged and controlled inundation of marsh vegetation.

4.3     On March 31, 2023, DU and the Contractor entered into a Unit Price Agreement (the "Contractor Agreement") for the construction of the water control systems incident to the Lagow Marsh Restoration Project. The Contractor Agreement incorporated Construction Plans and Construction Specifications (collectively, the "Specifications") governing all technical aspects

of the Project. The Contractor Agreement additionally included a proposed completion date calculated as seventy-five (75) days from date a Notice to Proceed was issued.

4.4     The Contractor's performance of this construction project was bonded initially by Western Surety Company under Performance Bond 30127828 (the "Bond"). A General Purpose Rider to the Bond substituted Defendant, Continental as the surety at the same address as Western Surety Company. The Bond issued by Surety was in the amount of $520,950.00.

4.5     The Contractor received the requisite Notice to Proceed on June 5, 2023, and began construction activities associated with the Project on or about June 8, 2023. At all material times, the Contractor was required to strictly comply with all Specifications contained in the executed Contractor Agreement.

4.6     By manner of a written letter dated September 19, 2023, DU provided notice of an active leak incident to a portion of the water control structure constructed by Contractor pursuant to the Contractor Agreement and accompanying termination notice. DU supported its letter with a diver's report which revealed that the depth of the sheet pilings below the water control structure in the area of the leak deviated substantially from the required Specifications, thereby resulting in the material issues noted. Notably, the Specifications required sheet pilings to be installed at a depth of 28', whereas Contractor actually installed the sheet pilings at depths of only between 3'6"- 13'1". Additionally, sheet pilings settled well below this water control feature, directly and proximately resulting in scouring by moving water which generated a gap below the end of the sheet pilings. The September 19, 2023, letter further advised that the leak continued worsening with each ensuing tidal cycle as the placed substrate continued to scour. Therefore, DU demanded the Contractor undertake immediate remediation efforts in a timely manner to remedy this issue.

4.7     As of October 18, 2023, the Contractor failed to provide any remediation plan or supplemental construction schedule intended to resolve these ongoing, Contractor-caused issues and thereby remedy their non-compliance with the agreed Specifications referenced above. As a result, DU was forced to declare the Contractor in default in accordance with the plain language and material terms of the Bond secured by the Contractor under the direction of DU for that purpose. Upon the Contractor's default, the Surety was bound to guaranty the Contractor's performance under the existing Bond.

4.8     Notwithstanding the Contractor's default under the terms of the Bond, the Surety has failed to fulfill its Bond obligations in the following manner: by requiring the Contractor to perform and complete its work under the Contractor Agreement; by undertaking to perform and complete the construction work itself through its' respective agents and/or independently retained contractors; by obtaining bids or negotiated proposals from qualified contractors to facilitate performance and thereby complete the scope of work implicated under the Contractor Agreement; or by making payment to DU for the full amount of the identified Surety Bond proceeds. Additionally, and despite DU obtaining repair quotes to rectify the Contractor's faulty performance - the lowest of which was $587,680.00 - the Surety has yet to offer more than $110,163.03 in satisfaction of its' stipulated performance obligation.

## V.
## CAUSES OF ACTION

### A. Claims and Causes of Action Asserted Against the Contractor –

### Count 1: Breach of Contract

5.1     On March 31, 2023, DU and the Contractor entered into a Contractor Agreement for construction of water control systems incident to the Lagow Marsh Restoration Project. At all material times, the Contractor was required to comply with the material Specifications contained

within the Contractor Agreement. The Contractor Agreement additionally included a proposed completion date of seventy-five (75) days from the date upon which the Notice to Proceed was issued.

5.2    The Contractor received a Notice to Proceed on June 5, 2023, and acting upon same, the Contractor began Project construction activities on or about June 8, 2023.

5.3    The Contractor breached the Contractor Agreement in the following manner:

- By failing to complete its' contractual scope of work within seventy-five (75) days from issuance date of the Notice to Proceed;

- By failing to comply with the agreed Specifications in the following manner:

  o By failing to drive the various sheet piles supporting the water control structure to the correct depth;
  o By allowing a leak to form in the way of the intended water control structure such that the water control structure was compromised and/or breached through scouring;
  o Allowing the sheet pilings to settle below the aluminum structure leaving a gap which created a scour below the end of the sheet piling such that the water control structure was compromised and/or breached; and
  o Failing to timely rectify, remediate, or cure the leak and non-compliance with the technical specifications and engineering plans.

5.4    The Contractor's breach of the Contractor Agreement and Specifications and their actions and/or omissions have directly and proximately caused harm to DU, resulting in monetary and non-monetary damages, including but not limited to inspection expenses, remediation, repair and cure costs, delay expenses, interest and reasonable and necessary attorneys' fees incurred thereby.

5.5    DU fully, or in the alternative, substantially performed its' own contractual obligations under the Contractor Agreement and Specifications.

5.6     As a direct and proximate result of the Contractor's breach, DU is entitled to recover their reasonable and necessary attorney fees pursuant to Texas Civil Practice & Remedies Code Chapter § 38.001(8).

**Count 2:  Negligent Misrepresentation**

5.6     Further pleading, and in the alternative as necessary, DU hereby asserts and otherwise contends the Contractor made numerous negligent misrepresentations to DU concerning their compliance with the Contractor Agreement, Specifications and performance of the material scope of work arising thereunder.  In particular, the Contractor negligently misrepresented to DU that:

- That it would complete performance of its obligations under the Contractor Agreement within seventy-five (75) days;

- That it would material comply with the Specifications;

- That it had completed all of the work required by Contractor to be performed under the Contractor Agreement and in compliance with the Specifications;

- That it had performed its Project work in a good and workmanlike manner;

- That it would procure a performance bond to guaranty its performance under the Contractor Agreement;

- That it had procured a performance bond guaranteeing its performance under the Contractor Agreement; and

- That it would rectify, remediate or cure the leak and non-compliance with the Specifications and accompanying engineered plans.

5.7     To the absolute contrary, the Contractor did not use or otherwise employ reasonable care in making the negligent misrepresentations.

5.8    The Contractor's negligent misrepresentations made to DU were at all times material, in that DU actually and justifiably relied upon Contractor's misrepresentations by each of the following:

- By entering into the Contractor Agreement with the Contractor;

- By paying the Contractor the sum of $421,314.93 for construction services rendered in connection with the Project; and

- By advising the Landowner that the Project was completed by Contractor pursuant to the agreed Specifications.

5.9    The Contractor's negligent misrepresentations directly and proximately caused injury to DU, resulting in the following damages:

- Contractual payments wrongly paid to Contractor for incomplete and otherwise non-compliant performance under the Contractor Agreement and Specifications;

- For the inspection, remediation, repair and cure costs associated with repairing the errors and/or construction defects directly and proximately caused by Contractor's non-performance under the Contractor Agreement and Specifications;  and

- Delay and demurrage expenses, reputational harm and loss of goodwill, interest, and associated attorney fees and costs incurred for the purpose of rectifying these issues.

**Count 3:  Fraud/Intentional Misrepresentation**

5.10    Further pleading, and in the alternative as necessary, DU hereby asserts and contends the Contractor made fraudulent and/or intentional material misrepresentations to DU during the course and scope of the Project.    Specifically, the Contractor fraudulently misrepresented each of the following to DU during their performance of the Contractor Agreement and Specifications relating to the Project:

- That Contractor would complete performance of its obligations under the Contractor Agreement within seventy-five (75) days;

- That the Contractor would materially comply with the Specifications provided for the Project;

- That the Contractor materially completed the entire scope of work required under the Contractor Agreement and in compliance with the Specifications;

- That the Contractor performed the Project and agreed scope of work in a good and workmanlike manner;

- That the Contractor would procure a performance bond to guaranty its' performance under the Contractor Agreement;

- That the Contractor had indeed procured a performance bond guaranteeing its performance under the Contractor Agreement; and

- That the Contractor would rectify, remediate or cure the leak and non-compliance with the Specifications and accompanying engineered plans.

5.11    Despite the foregoing, the Contractor made specific and false representations of material fact to DU, knowing such representations were entirely false.

5.12    The Contractor expressly intended for DU to rely upon its' fraudulent and intentional misrepresentations of fact to secure payment and a release of all material obligations arising under the Contractor Agreement.  Indeed, DU did justifiably rely upon the Contractor's intentional and otherwise fraudulent misrepresentations of material fact relating to the Contractor performance by the following:

- By entering into the Contractor Agreement with the Contractor to perform the underlying scope of work relating to the Project;

- By paying the Contractor $421,314.93 for construction services allegedly rendered during the course and scope of the Project; and

- By advising the Landowner the Project had been completed by the Contractor in accordance with the Specifications.

5.13    The Contractor's fraudulent misrepresentations forming the basis for this lawsuit directly and proximately caused injury to DU, thereby resulting in the following damages:

- Monies wrongly paid to Contractor for its incomplete and non-compliant performance under the Contractor Agreement;

- Remediation, repair and cure costs to repair the errors and defects caused by Contractor's non-performance under the Contractor Agreement;

- Delay and demurrage expenses, reputational harm and loss of goodwill, interest and attorneys' fees arising from their reliance upon the Contractor's fraudulent and intentional misrepresentations of material fact.

**Count 4:  Breach of the Warranty of Workmanlike Performance**

5.14    Further pleading, and in the alternative as necessary, DU asserts and otherwise contends the Contractor provided construction and/or engineering services to DU for the underlying Project. In so doing, the Contractor provided repair and/or modification services incident to the water control and other structures at the Project site pursuant to the Specifications provided.

5.15    The Contractor failed or otherwise neglected to provide construction services incident to the Project in a good and workmanlike manner as follows:

- By failing to complete performance of the Contractor's construction services in a timely manner as stipulated within the Contractor Agreement;

- By failing to comply with the applicable Specifications for the Project and scope of work arising therefrom;

- By failing to procure a performance bond guarantying Contractor performance under the Contractor Agreement and Specifications; and

- By failing to rectify, remediate or timely cure the Contractor's non-compliance with the Specifications and engineering plans.

5.16    In so doing, the Contractor failed to perform its work in the manner of a person or entity who possesses the requisite skills, knowledge, training or experience necessary to successful practice the construction trade and/or occupation in a manner generally considered proficient by those capable of judging the Contractor's applicable scope of work.

5.17    As a direct and proximate result of Contractor's breach of the warranty of workmanlike performance, DU asserts and contends that it suffered the following damages for which relief is sought in the context of this lawsuit:

- The payment of monies wrongfully charged by the Contractor for the unworkmanlike performance of the agreed Specifications and scope of work incident to the Contractor Agreement;

- The costs associated with remediation, repair and cure costs associated with remedying the errors and defects caused by the Contractor's unworkmanlike performance;

- Delay and demurrage expenses, reputational harm and loss of goodwill, interest and attorney fees and costs associated with prosecuting this lawsuit and these claims and causes of action against the Contractor.

## Count 5: Violations of the Construction Trust Fund Act

5.18    The Defendants, Jeffrey Boudreaux and Brenda Boudreaux are individually liable to the Plaintiff for violations of the Construction Trust Fund Act, Tex. Prop. Code §162.001 *et. seq*. Defendants Boudreaux received monies from the Plaintiff for the improvement of real property and have nevertheless failed to tender the payment of monies owed to their subcontractors for work performed on the construction project at issue in this lawsuit.  As a result, the Plaintiff were forced to pay numerous subcontractors simply to finish the project. These funds greatly exceed the $500.00 threshold and, upon information and belief, Defendants Boudreaux had retained, used or otherwise diverted these funds with the specific intent to deprive their subcontractors of said funds.

5.19    The Plaintiff seeks to hold the Defendants Boudreaux liable for their conduct as the owner, manager and agent of B&J, Inc. for the full amount of damages to which they are entitled to seek and receive under Tex. Prop. Code §162.032.

**B.**    **Claims and Causes of Action Asserted Against the Surety -**

<u>**Count 1**</u>:  **Breach of Contract**

5.20    The underlying Bond obligates the Defendant, Surety to guaranty the Contractor's performance of its' contractual scope of work under the Project for the direct benefit of DU.

5.21    By way of written correspondence dated September 19, 2023, DU provided both the timely notice of an active leak in a portion of the water control structure constructed by the Contractor under the Contractor Agreement and an accompanying termination notice. The September 19, 2023, correspondence expressly advised that the leak continued to worsen with every tide cycle as the substrate continued to scour as a result of the Contractor's non-compliance scope of work and performance thereof.  DU further demanded the Contractor undertake immediate remediation efforts to satisfactorily resolve this continuing issue and damages arising therefrom.

5.22    As of October 18, 2023, the Contractor wholly failed to provide any form of remediation plan or construction schedule intended to resolve the ongoing, Contractor-caused leak issues and associated non-compliance with the Specifications and their overall agreed scope of work.  As a direct and proximate result of this non-compliance, DU was forced to declare the Contractor in material default pursuant to the terms and conditions of the Bond.  Upon the Contractor's default, the Surety became legally bound to guaranty the entirety of Contractor's performance pursuant to the Bond.

5.23    Notwithstanding the Contractor's default under the terms of the Bond, the Defendant, Surety breached the terms of the underlying Bond by failing to comply with or perform each of the following enumerated items:

- By requiring the Contractor to perform and complete its' scope of work implicated by the Contractor Agreement;

- By undertaking to perform and otherwise complete the construction scope of work itself through its' agents or retained independent contractors; By obtaining bids or negotiated proposals from qualified contractors to perform, complete and otherwise remedy the non-compliant scope of work contained within the Contractor Agreement and Specifications; or

- To promptly tender payment to DU for the full amount of the Bond proceeds.

5.24    DU asserts and otherwise contends that it fully, or in the alternative, substantially performed the entirety of its' own contractual obligations pursuant to the Bond.

5.25    As a direct and proximate cause of the foregoing breaches of Contractor Agreement by the Surety, DU has suffered (and will continue suffering) monetary and other damages far exceeding the minimum jurisdictional limits of this Court, including but not otherwise limited to the following:

- Incurring the payment of additional monies necessary to remediate, repair and otherwise cure the errors and/or defects caused by Contractor in performance of their contractual scope of work; and

- Incurring both delay and demurrage expenses, reputational harm and loss of goodwill, interest and reasonable and necessary attorney fees and costs associated with pursing this lawsuit.

5.26    As a direct and proximate result of the Surety breaching the terms and conditions of the Bond, DU was required to retain and pay attorneys to represent their interests in this cause. DU previously presented this claim to the Surety well in excess of thirty (30) days prior to the filing of the above-captioned lawsuit. Accordingly, DU is entitled to recover reasonable and necessary attorney fees pursuant to Texas Civil Practice & Remedies Code Section 38.001 *et seq*.

**Count 2:  Suit for Declaratory Judgment against the Surety**

5.27    The underlying Bond obligates the Surety to guaranty the Defendant Contractor's performance of its Project scope of work for the direct and express benefit of DU. A justiciable controversy now exists between DU and the Surety concerning the rights, legal obligations and

status of the parties pursuant to the Bond. The controversy is both legitimate and substantial, involving a genuine and obvious conflict of interests.

5.28    By manner of a written correspondence dated September 19, 2023, DU provided both timely notice of an active leak in a portion of the water control structure constructed improperly by Contractor pursuant to the Contractor Agreement and accompanying termination notice. The September 19, 2023, correspondence advised the Surety the leak was continuing to worsen with each tidal cycle as the substrate continued to scour. Therefore, DU requested the Contractor undertake prompt remediation efforts to prevent further incidental and consequential damage to the water control feature.

5.29    As of October 18, 2023, the Contractor had provided no remediation plan or a construction schedule to resolve the ongoing, Contractor-caused leak issues and their material non-compliance with the Specifications and resulting scope of work. As a result thereof, DU was forced to declare Contractor in default pursuant to the express terms of the Bond itself. Upon default by the Contractor, the Surety became bound to guaranty the Contractor's performance pursuant to the Bond.

5.30    Notwithstanding Contractor's default under the terms and conditions of the underlying Bond, the Surety has refused to fulfill the Bond obligations owed to DU. Accordingly, DU requests the Court declare construe and interpret the Bond and reach the following findings as a matter of law and equity:

- That DU fully, or in the alternative, substantially performed its' own material obligations under the Bond;
- That the Surety failed to perform its Bond obligations by:

  o Failing to undertake any efforts whatsoever to perform and complete the construction scope of work itself through retained agents and/or qualified independent contractors;

     o  By failing to obtain bids and/or negotiated proposals from qualified contractors to ensure performance of the applicable scope of work and complete the Contractor's obligations owed to DU pursuant to the Contractor Agreement and accompanying Specifications;

     o  By tendering payment to DU in the full amount of the surety Bond proceeds.

5.31    DU asserts and contends that it is entitled to recover reasonable and necessary attorney fees for their prosecution of these Declaratory claims pursuant to Texas Civil Practice & Remedies Code Section 37.009.

## VI.
## TRCP 193.7

6.1    Pursuant to Texas Rule of Civil Procedure 193.7, the Defendants are collectively placed on actual notice that any documents produced in response to written discovery will be used in pretrial proceedings and at trial and will be deemed authentic unless they make valid objections to authenticity pursuant to this rule.

## VII.
## JURY DEMAND

7.1    Plaintiff DU hereby demands a trial by jury trial and tenders the appropriate fee with this petition.

## VIII.
## REQUEST FOR DISCLOSURE

8.1    DU requests that Defendants disclose the information or material described in Texas Rule of Civil Procedure 194.2.

## IX.
## PRESERVATION OF EVIDENCE

9.1     DU hereby requests and demands that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incident or actions made the basis of this lawsuit, or the damages resulting therefrom, including but not limited to: Project materials, equipment, and machinery; photographs; videotapes, audiotapes; recordings; business records; estimates; invoices; checks; correspondence; memoranda; construction records and files; facsimiles; emails; voice mail; text messages; investigations; cellular telephone records; calendar entries; and any electronic image, data, or information related to Plaintiff, Landowner, the Lagow Marsh Construction Project, the Contractor Agreement, the Surety Agreement, and/or the incident or actions and omissions made the basis of this lawsuit, or any damages resulting therefrom. Failure to maintain such items will constitute spoliation of evidence.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, DU prays that citation be issued and served upon Defendants in a form and manner prescribed by law, requiring that Defendants appear and answer, and that upon final hearing or trial hereof, the Court enter judgment in DU's favor for actual damages, exemplary damages, costs of court, pre- and post-judgment interest at the maximum rate allowed by law, attorney's fees, and for all such other and further relief to which DU may be justly entitled.

Respectfully submitted,

**SCHOUEST, BAMDAS, SOSHEA,**
**BENMAIER, & EASTHAM**

By:     */s/ Donald L. Jones* _____
**DONALD L. JONES**
State Bar No. 24032477
Email: djones@sbsb-eastham.com
807 N. Upper Broadway, Suite 201
Corpus Christi, Texas 78401
Telephone:  (713) 588-0446, Ext. 756

**ERIK D. GARZA**
State Bar No. 24028523
Email: egarza@sbsb-eastham.com
The Hunter Building
306 Kempner St., Suite 301
Galveston, Texas 77550
Telephone: (346)510-2797

**ATTORNEYS FOR PLAINTIFF**
**DUCKS UNLIMITED, INC.**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Don Jones on behalf of Donald  Jones
Bar No. 24032477
djones@sbsb-eastham.com
Envelope ID: 106146029
Filing Code Description: Amended Filing
Filing Description: Plaintiff's First Amended Petition
Status as of 9/29/2025 8:37 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Donald LJones | | djones@sbsb-eastham.com | 9/26/2025 3:32:50 PM | SENT |
| Erik Garza | | egarza@sbsb-eastham.com | 9/26/2025 3:32:50 PM | SENT |
| Vickie Schuette | | vschuette@sbsb-eastham.com | 9/26/2025 3:32:50 PM | SENT |